18-MJ-2502-MBB

# AFFIDAVIT OF ATF SPECIAL AGENT KELTAR MUI

I, Special Agent Keltar Mui, being sworn, state as follows:

## INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), where I have been employed for approximately thirteen years. I am currently assigned to the Boston Group II Field Office and my duties include, among other things, the investigation of violations of laws related to firearms trafficking, firearm possession by prohibited persons, the use of firearms in drug trafficking crimes, and the investigation of violations of laws related to explosives violations and incendiary (arson) fires. I am a graduate of the ATF National Academy and of the Federal Law Enforcement Training Center.

2. During my law enforcement career, I have participated in investigations involving firearms and drug trafficking, firearms possession by prohibited persons, and the use of firearms in furtherance of drug trafficking crimes, many of which have occurred in Massachusetts. My investigations have included the use of surveillance techniques and the execution of search, seizure, and arrest warrants.

3. Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been convicted in a court of a crime punishable by imprisonment of a term exceeding one year to possess a firearm or ammunition in or affecting interstate commerce.

4. Having so stated, I make this affidavit in support of a criminal complaint charging **JERMAINE TINDAL,** DOB xx/xx/1989, with being a felon in possession of a firearm and ammunition in violation of that statute.

5. The statements contained in this affidavit are based on my own work in this investigation, my training and experience, and information provided by other agents, police officers, and witnesses. This affidavit is submitted for the limited purpose of establishing probable cause to believe that TINDAL violated 18 U.S.C. § 922(g)(1). It therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of the investigation.

**USE AND RELIABILITY OF A COOPERATING WITNESS**

6. Since approximately August of 2017, the ATF has been engaged in investigations focusing on narcotics distribution and illegal firearm possessions occurring in and around the Mary Ellen McCormick, Old Colony Avenue, and D Street housing developments in South Boston, MA ("the Developments"). The instant investigation is one of these investigations.

7. A cooperating witness ("CW") was enlisted to assist in the instant investigation. At the outset of the investigation, the CW was provided with an apartment located at 1 Gavin Way, Apartment #557, South Boston, MA, in the Mary Ellen McCormick Development. After moving into this apartment, the CW was instructed to identify and become acquainted with individuals in the development and to gather evidence relative to their drug distribution, illegal firearm possession, and/or acts of violence. To date, under ATF's direction, the CW has made multiple controlled purchases of firearms and narcotics.

8. For each of these controlled purchases, fellow investigators and I met with the CW, searched his/her person and vehicle (if used) finding no contraband, equipped the CW with a transmitting device and audio/video recording devices, and provided the CW with government funds for the purchase of the evidence. We then followed the CW to a specific target area (to the

extent possible),[1] monitored the conversations and transactions as they were transmitted over ATF radios, and then followed the CW back to a designated location for evidence transfer and debriefing. We then preserved all firearm and/or drug evidence as well as all electronic surveillance evidence, specifically compact discs containing the audio/video recordings of the undercover transactions. At the conclusion of this investigation, we plan to, at an appropriate time, to reveal the identity of the CW, who, if necessary, will testify as a government witness in criminal proceedings.

9. Since the start of my dealings with the CW, I have found the CW to be truthful and reliable, and I have found his/her information to be accurate and often independently corroborated by other evidence. The CW has multiple arrests and criminal convictions for forgery, uttering counterfeit notes, motor vehicle violations, disorderly conduct, impersonation, and telecommunications fraud. ATF pays the CW for his/her services, and Homeland Security Investigations ("HSI") provides a Deferred Action on his/her immigration status.

## IDENTIFICATION OF TINDAL

10. On March 28 and March 29, 2018, an individual named Jomar VENTURA (dob xx/xx/1994), of South Boston, showed the CW on VENTURA's phone, and sent the CW via text message from VENTURA's phone, photos of firearms that VENTURA claimed he could arrange for the CW to purchase. VENTURA also stated to the CW he had multiple firearms sources.

11. On July 13, 2018, VENTURA contacted the CW via text message and indicated that he had a gun source by the name of "J," referring to him as "the guy with the toys." The CW understood "toys" to mean "guns." VENTURA provided the CW a phone number of 857-800-6771 for "J."

---

[1] The area within which the CW was operating was very difficult to surveil due to closeness of the community and the difficulty of establishing safe surveillance positions that would not be noticed by area dealers.

12. ATF agents later identified "J" as Jermaine TINDAL. To identify TINDAL, ATF agents obtained the subscriber information for the phone number 857-800-6771, and learned that the subscriber was listed as "BOBO BOBO" of "313 Eath Street, Boston, MA 02127." Believing that to be a fictitious name and address, agents further investigated, and learned that TINDAL lived at 313 E. 8th Street #818, Boston, MA 02127 – a similar address to that listed in the subscriber information for the Target Mobile Phone. Investigators confirmed that TINDAL has a valid Massachusetts driver's license under the name of JERMIANE IKEENUM TINDAL, date of birth X/XX/1989, and obtained a photo of TINDAL from the Massachusetts Registry of Motor Vehicles ("RMV"). After the CW met "J" in person, as described more fully below, agents showed the CW the RMV photo of TINDAL, and the CW confirmed that "J" was the individual depicted in TINDAL's RMV photo.

13. Additionally, on September 11, 2018, the CW received a phone call from TINDAL, who stated he had been arrested by the Boston Police Department for charges of animal cruelty and was currently at district D4. TINDAL requested the CW to bail him out of jail and provided to the CW his full name of Jermaine TINDAL.

14. Upon reviewing TINDAL's criminal record from Massachusetts and South Carolina, investigators and I learned that, as of July 2018, he had been arrested at least thirteen times with at least seven convictions, at least one of which is a felony. Specifically, I learned that TINDAL was convicted on October 31, 2013 of shoplifting $2000 or less, third or subsequent property offense, in a court in Clarendon County, South Carolina, pursuant to South Carolina Code Sections 16-13-110 and 16-1-57. Based on my training and experience, and my review of South Carolina Code Section 16-1-20, I know that this crime is punishable by a term of imprisonment exceeding one year under South Carolina law, and thus TINDAL is prohibited

from possessing a firearm or ammunition in or affecting interstate commerce pursuant to 18 U.S.C. § 922(g)(1). Records also indicate TINDAL has an active warrant issued by the South Carolina Department of Probation, Parole and Pardons.

15. Following a determination that TINDAL was federally prohibited from possessing firearms and ammunition, investigators and I directed the CW to continue communications with TINDAL in an effort to arrange for the controlled purchase of a firearm. On July 19, 2018, the CW successfully made a controlled purchase of a firearm from TINDAL. This operation is described below.

**THE JULY 19, 2018 SALE OF A FIREARM AND AMMUNITION BY JERMAINE TINDAL TO THE CW**

16. On July 19, 2018, the CW informed investigators that TINDAL had stated he could obtain a shotgun to sell to the CW for $600 in United States currency. TINDAL described the shotgun to the CW as a "590" and "one of the little short shotguns." The CW subsequently received a picture of the firearm from TINDAL by way of text message. Subsequent telephone calls and text messages between the CW and TINDAL were captured and logged into ATF evidence. At the direction of ATF, the CW arranged to purchase the firearm from TINDAL later the evening of July 19.

17. On that same date, at a prearranged location, fellow investigators and I met with the CW and planned for an undercover operation involving the controlled purchase of a firearm from TINDAL. Prior to the CW's departing the staging area, we searched the CW's person and vehicle, finding no contraband. We then equipped the CW with a transmitting device (body wire) and two audio/video recording devices. We also provided the CW with pre-recorded buy money.

18. At approximately 6:22 pm on July 19, the CW departed the staging area in his/her vehicle and was followed by ATF surveillance units. The CW parked the vehicle in front of his/her apartment building, proceeded directly to his/her apartment and established contact with TINDAL via telephone. During the telephone call, TINDAL advised he was on his way to the CW's apartment with his daughter and had the firearm secreted in a stroller.

19. At approximately 6:26 pm, ATF surveillance observed TINDAL walking in the direction of the CW's apartment. TINDAL was pushing a stroller which was occupied with a child. Shortly after, TINDAL, accompanied by a young female child, entered the CW's apartment and placed a black duffle bag on a table for the CW to inspect. Inside the duffle bag, the CW observed a shotgun, as well as five rounds of ammunition. TINDAL then handled the shotgun and demonstrated to the CW how to operate the action. The CW then counted $600 of government money in front of TINDAL and handed him the full amount. TINDAL and the CW then discussed TINDAL's upcoming trip to South Carolina where TINDAL planned to retrieve additional firearms and return to Massachusetts with them. TINDAL then exited the CW's apartment. Following the transaction, the CW followed ATF Special Agent Matthew Shibley and me back to the staging area.

20. At approximately 6:50 pm, the CW returned to the staging area. At this time, Special Agent Shibley and I turned off and collected all electronic recording/transmitting equipment. I then took the firearm, ammunition and electronic evidence into my possession, and this evidence was subsequently transported to the ATF evidence vault in Boston, Massachusetts. I also searched the CW's vehicle and person for contraband with negative results. Finally, we debriefed the CW to confirm all the details regarding the transaction.

21. On that same date, Special Agent Shibley and I examined the firearm and determined it to be a Harrington and Richardson, model 440, 12-gauge shotgun. I determined the shotgun had an approximate barrel length of 11.5 inches and an overall length 24 inches and appeared to have been modified from the original manufacturer's configuration. I also determined that the five rounds of ammunition included with the firearm were Remington, 12-gauge ammunition. All evidence was logged into the ATF evidence vault in Boston.

**INTERSTATE NEXUS DETERMINATION**

22. On July 23, 2018, Special Agent Mattheu Kelsch, a certified ATF firearm interstate nexus expert, examined and researched the firearm and ammunition possessed by TINDAL on July 19, 2018 for purposes of determining classification under Title 18 U.S.C., Chapter 44 and whether they had moved in interstate or foreign commerce. The examination was conducted at the ATF Boston Field Division Office. During the examination, Special Agent Kelsch examined the firearm markings which include but are not limited to the name of the manufacturer, model, caliber or gauge, and also, when applicable, the importer.

23. Special Agent Kelsch concluded that the firearm purchased by the CW from TINDAL is a "firearm" as defined in Title 18, United States Code, Section 921(a)(3), and was not manufactured in the Commonwealth of Massachusetts.

24. Special Agent Kelsch also concluded that the ammunition purchased by the CW from TINDAL is "ammunition" as defined in Title 18, USC, Section 921(a)(17)(a), and was not manufactured in the Commonwealth of Massachusetts.

25. SA Kelsh indicated in a report dated July 26, 2018, that it is his opinion that if the firearm and ammunition were received and/or possessed in the Commonwealth of Massachusetts, they traveled in or affected interstate and/or foreign commerce.

## CONCLUSION

26. Based on the foregoing, I submit that there is probable cause to believe that, on July 19, 2018, JERMAINE TINDAL, having been previously convicted in a court of a crime punishable by a term of imprisonment exceeding one year, did possess, in and affecting interstate commerce, one firearm and five rounds of ammunition in violation of Title 18, United States Code, Section 922(g)(1).

I declare that the foregoing is true and correct to the best of my knowledge and belief.

KELTAR MUI
SPECIAL AGENT, ATF

Subscribed and sworn to before me this 19th day of September, 2018

Marianne B. Bowler, USMJ

HON. MARIANNE B. BOWLER
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS